UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DELAINE SMITH, BRIAUNA BOSWORTH,
SHARRONA BRIGHTMAN,
and ELIZABETH MULRONEY,

    Plaintiffs,

v.                                       Case No. 3:20-cv-629-J-39JRK

MIKE WILLIAMS, in his official
capacity as Sheriff of the
Consolidated City of Jacksonville, Florida,
J. H. WING, F. CANNADAY,
D. D. STUHR, and C. S. JOHN,

    Defendants.
_____/

## DEFENDANT CITY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendant, SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Consolidated City of Jacksonville ("City"),[1] hereby responds to Plaintiffs' Motion for Preliminary Injunction and Memorandum of Law, Doc. 10 (Motion), which Plaintiffs filed in conjunction with their Complaint and Demand for Jury Trial. Doc. 1 (Complaint). As discussed below, the Court should deny Plaintiffs' Motion for preliminary injunctive relief.

---

[1] The law treats a claim against the Sheriff in his official capacity as a claim against the governmental entity he represents, here the City of Jacksonville. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020) (citing *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 690 n.55 (1978)).

1

## I. The Events of May 30 and 31, 2020[2]

The events in downtown Jacksonville on Sunday, May 31, 2020, cannot be appreciated, nor evaluated fully and fairly, without also taking into account the day and night before. Saturday, May 30, 2020, was the first day of large public protests in Jacksonville following the death of George Floyd in Minneapolis on May 25, 2020.

As summarized in the declaration of JSO Chief Donald F. Tuten, JSO planned its management of the Saturday protest based on the expectation of a vehicle caravan around the Police Memorial Building ("PMB"), located at 501 E. Bay Street, involving some 300 protesters and their vehicles. Instead, by 3:00 p.m., a crowd of more than 2500 had gathered outside the PMB. *See generally* Declaration of Donald F. Tuten (Tuten Declaration). JSO therefore adjusted its staffing and operational plans accordingly.

The May 30th main protest march proceeded without incident to the Duval County Courthouse and returned to the PMB at approximately 4:30 p.m. By 5:00 p.m., the vast majority of protesters had dispersed and left the downtown area. A smaller group, although still several hundred in number, split into two groups and continued to march throughout the downtown area as well as around the PMB. As reflected in Chief Tuten's declaration, the protesters became violent and aggressive towards police officers; the burning of a police vehicle and injury to an officer ensued. *See* Tuten Declaration at ¶ 7. It then became necessary for officers to deploy tear gas to gain control of the situation. A number of protesters were arrested on various charges. It was not until after midnight on Sunday, May 31, 2020, that JSO was able to declare the incident under control and ended. *Id.* at ¶ 11.

---

[2] The various materials referenced herein will be filed immediately hereafter under City's Notice of filing documents in support of this Response.

In anticipation of the protest planned for later in the day on May 31, 2020, and as informed by the events of the long day just ended, JSO prepared a 24-hour Incident Action Plan.[3] For the first time in its history, JSO mobilized its entire 60-officer Mobile Field Force Unit (MFF) to be available to respond to any violence or civil unrest. *See* Declaration of Patrick L. Ivey at n.1 (Ivey Declaration). As further reflected in the declaration of Assistant Chief W. Mike Johnson, the MFF was briefed that morning at the PMB on the plan and reminded of relevant legal and tactical issues, considerations, and procedures including First Amendment rights, the elements of potential crimes, and restrictions on the use of force. Declaration of W. Mike Johnson at ¶ 3 (Johnson Declaration).

The events in downtown Jacksonville on May 31, 2020, are described in the declarations of Chief Jackson W. Short and Assistant Chief Johnson. *See generally* Johnson Declaration; Short Declaration. The May 31, 2020, protests encompassed generally the same area and locations as the May 30, 2020, protests, but also included a march onto the Main Street bridge. As was the case on Saturday, the Sunday protests began and proceeded peacefully (with the exception of one early arrest on Sunday[4]) and the first march of the day returned to the Duval County Courthouse at approximately 3:30 p.m.[5]

At approximately 4:30 p.m., the protesters began a second march, this time heading west on Adams Street and eventually making their way to the Main Street bridge at Bay Street. *See* Short Declaration at ¶ 3. Thereafter, the protesters attempted to block the southbound on-ramp to the bridge and began to move onto the bridge itself. *Id*. These actions were illegal. Section 316.130, Fla. Stat. As described in Chief Short's declaration, JSO responded to the illegal

---

[3] *See* Declaration of Jackson W. Short, Composite Exhibit A (Short Declaration).
[4] *See* Johnson Declaration at ¶ 4.
[5] *See* Short Declaration, Exhibit C: P1CAD Log.

actions of the protesters and the situation escalated as many of the protesters escalated their illegal acts by resisting lawful commands and throwing bottles and other objects at JSO officers. *Id.* at ¶ 5-6. As a result, one MFF officer was required to deploy "pepper" spray to defend against further attacks. *Id.* at 5. Shortly after 5:00 p.m., Chief Short declared the protest an Unlawful Assembly and orders to disperse were announced by amplified sound to the protesters. *Id.* at ¶ 5-6; Exhibit C.

The protesters did not all disperse after being ordered to at the bridge. Short Declaration at ¶ 6. Some proceeded west on Bay Street and reassembled in front of the courthouse where altercations between the protesters and the police ensued and multiple reminders to disperse were ignored. *Id.* Ultimately, it became necessary to utilize the MFF to arrest those protesters who refused to disperse to end the unlawful assembly. Plaintiffs Smith and Mulroney were among those arrested at this location. *Id.* at ¶ 7.[6]

Others who refused to disperse after the violence at the Main Street bridge proceeded east on Bay Street in the direction of the PMB. Short Declaration at ¶ 8. As at the courthouse, multiple warnings to disperse were announced and altercations ensued. After a final warning was ignored, numerous protesters were arrested for Unlawful Assembly. Plaintiffs Bosworth and Brightman were among those arrested at this location.[7]

---

[6] To the extent that Plaintiffs' Motion suggests that the arrests of Plaintiffs Smith and Mulroney preceded the violence at the Main Street bridge, it is incorrect.

[7] It should be noted that Plaintiffs' submission includes evidence of alleged excessive force against individuals on May 31, 2020, who are not parties to this action. As such, the Court should reject this evidence as irrelevant to Plaintiffs' request for injunctive relief, preliminary or otherwise. *See e.g.*, *Knight v. Ala.*, 14 F.3d 1534, 1554-55 (11th Cir. 1994) (noting generally that standing requires that a party "assert only their own rights and not those of others.").

## II.     Plaintiffs' Complaint

In their Complaint, Plaintiffs list a total of eleven claims against Defendants. First, in Counts I and II, Plaintiffs allege that the JSO has a custom and policy of violating citizen's rights to peacefully assemble, as well as a custom and policy of arresting and using excessive force against citizens without probable cause and with the intent to infringe on their rights to free speech. *See* Complaint at ¶¶ 79, 82. Plaintiffs seek declaratory and injunctive relief against JSO for these claims. In Counts III – X, Plaintiffs assert that the individual officers who arrested them did so in retaliation for Plaintiffs exercising their Free Speech rights and arrested them without probable cause. Plaintiffs seek damages for the same. *Id.* at ¶¶ 83-114. In Plaintiffs' final count, they assert an additional damages claim against Sheriff Williams in his official capacity for JSO's alleged custom and policy of unlawfully arresting and using excessive force against citizens in violation of the First and Fourth Amendments. *Id.* at ¶¶ 119-117 [sic].[8] In Plaintiffs' instant Motion, they seek preliminary injunctive relief limiting and proscribing JSO's arrest practices pending the outcome of this litigation. *See generally* Motion.

## III.    Standard of Review

The purpose of a preliminary injunction "is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1383 (M.D. Fla. 2005). In order to obtain a preliminary injunction, the plaintiff must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) that the threatened injury outweighs any harm the injunction may cause to the defendant(s); and (4) that the injunction would not be adverse to the

---

[8] Plaintiffs' final count is numbered IV. However, a count IV already exists earlier in the Complaint. *See* Complaint at ¶¶ 88-91. It is presumed that Plaintiffs intended that the last count be numbered as "XI." Likewise, the last paragraph in Plaintiffs' Complaint is numbered as ¶ 117, but appears to be an error, as this paragraph follows paragraphs 119-123.

public interest. *See Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020); *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). "Generally, the most important determination is whether there is a substantial likelihood of success on the merits." *Deutsche Bank Sec., Inc. v. Ades*, No. 18-25142-CIV, 2019 WL 1077905, at *3 (S.D. Fla. Mar. 7, 2019) (citing *Schiavo ex rel. Schindler*, 357 F. Supp. 2d at 1383 ("The first of the four prerequisites to temporary injunctive relief is generally the most important.")). Moreover, "[b]ecause the preliminary injunction is an extraordinary and drastic remedy, it is not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Church*, 30 F.3d at 1342 (quotations and citations omitted).

This Court should not grant preliminary injunctive relief to Plaintiffs. First, even if Plaintiffs could satisfy all the elements required for a preliminary injunction, this Court lacks jurisdiction to hear their injunction claims, as Plaintiffs lack standing to seek injunctive relief. Likewise, while Plaintiffs may be able to argue that the preliminary injunction elements regarding the balance of harms and public interest tip in their favor, they cannot establish they have a substantial likelihood of success on their claims for injunctive relief. Nor can Plaintiffs show they have suffered irreparable harm to justify issuance of an injunction. Accordingly, the Court should deny Plaintiffs' Motion.

## IV. Analysis

### A. Standing

At the outset, this Court does not have jurisdiction to entertain Plaintiffs' claims for preliminary injunctive relief. "Article III standing is a prerequisite to a federal court's exercise of subject-matter jurisdiction." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*,

904 F.3d 1248, 1264 (11th Cir. 2018). Generally, in order to demonstrate standing, a plaintiff has the burden to establish that (1) she has suffered an injury in fact; (2) a causal connection exists between the injury and the complained of conduct; and (3) it is likely rather than speculative that the injury will be cured by a favorable decision by the court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Worthy v. City of Phenix City, Ala.*, 930 F.3d 1206, 1213-14 (11th Cir. 2019); *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006). However, when seeking injunctive or declaratory relief, a plaintiff must also allege and ultimately prove "a real and immediate threat of future harm." *Elend*, 471 F.3d at 1207 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). *See also J W by & through Tammy Williams*, 904 F.3d at 1264 (citing *Church*, 30 F.3d at 1337 (citing *Lyons*, 461 U.S. at 102)) (party must prove "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." (emphasis in original)). Moreover, "[b]ecause of the inquiry's focus on wholly prospective conduct, it follows that '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Elend*, 471 F.3d at 1207–08 (citing *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))). Hence, in order for a plaintiff to meet the required showing of a real and immediate threat of future harm, the plaintiff must establish that a "sequence of individually improbable events" would occur. *J W by & through Tammy Williams*, 904 F.3d at 1272.

In their Complaint, Plaintiffs ask the Court to enjoin the JSO from "in any way arresting or using force against persons engaged in peaceful protests." Complaint at ¶¶ 80(b), 82(b). Likewise, Plaintiffs seek preliminary injunctive relief prohibiting the JSO from arresting or using force against individuals engaged in future protests except under very specific and prescribed

7

circumstances. Motion at 3-4. However, in order to have standing to seek prospective relief, Plaintiffs must not only allege that they will assuredly have additional encounters with JSO officers, but they must "also make the incredible assertion that either" many officers usually unlawfully arrest citizens in retaliation for exercising their rights to free speech and freedom of assembly, and always use excessive force in doing so, or, that the "City ordered or authorized the officers to act in such a manner." *Lyons*, 461 U.S. at 105. Plaintiffs cannot, and have not, made this showing.

In the Complaint, Plaintiffs allege their "desire to continue to engage in peaceful protests" but that they "fear doing so will result in . . . further arrest." Complaint at ¶ 64. Plaintiffs reiterate the same in their Motion. Motion at 11; Doc. 11-1 at ¶ 13; Doc. 11-3 at ¶ 12; Doc. 11-4 at ¶ 14; Doc. 11-5 at ¶ 14. However, Plaintiffs go no further. This is insufficient for standing purposes.

In this context, the Seventh Circuit's reasoning in *Schirmer v. Nagode*, 621 F.3d 581 (7th Cir. 2010), is instructive. There, plaintiffs challenged their arrests under a city's disorderly conduct ordinance, alleging they were unlawfully arrested while they were peacefully protesting. *Id.* at 583. The court determined the plaintiffs lacked standing to seek an injunction prohibiting the city from enforcing the ordinance. The court reasoned that

> [p]erhaps if we had a record showing a persistent pattern of similar police misconduct, [the] persons intending to engage in protected speech and expression might be able to show that they were entitled to injunctive relief of some kind, if not against all enforcement of the provision then at least against future such misconduct. The record before us, however, shows only an isolated misuse of the failure-to-disperse provision. We understand that plaintiffs intend to act in the future as they acted when they were arrested without apparent justification, but they have not presented any evidence sufficient to justify a conclusion that their experience was the result of a Chicago policy or custom of misapplying local ordinances against disfavored speech. These plaintiffs' experience appears, on this record, to be the result of an isolated misuse of the failure-

> to-disperse provision and indicates that they are not reasonably likely to face a future prosecution if [the city failure-to-disperse provision] is enforced according to its terms.

*Id.* at 588. The court, therefore, rejected the plaintiffs' claim for injunctive relief. *See also J W by and through Tammy Williams*, 904 F.3d at 1267-1269 (no standing where evidence demonstrated that over an eight-year period, chemical spray was deployed in school setting on average only 1.7 times a year); *Elend*, 471 F.3d at 1209 ("In the four years since Plaintiffs' alleged First Amendment violation, they have not asserted that they protested [the President] at the Sun Dome or any other venue, for that matter. The entirely speculative nature of 'future protests' would render wholly advisory any prospective relief."); *Washington v. Vogel*, 156 F.R.D. 676, 680 (M.D. Fla. 1994) ("Here, more than three years passed from the time [Plaintiff] was stopped to the time she filed suit. It has now been more than four years since the stop. There is no indication that [plaintiff] has again been stopped on [the highway] or anywhere else in [the county] by a member of the [sheriff's office]. These circumstances suggest a diminished likelihood that [plaintiff] will again be stopped.").

In accordance with *Schirmer* and the aforementioned precedent, this Court should rule similarly. Plaintiffs have not presented a "persistent pattern of similar police misconduct." *Schirmer*, 621 F.3d at 588. Rather, the record presently before the Court demonstrates that in the last 36 days since the events on May 30 and 31, 2020, there have been more than 30 peaceful protests in Jacksonville. *See* Declaration of Patrick L. Ivey, Exhibit C (Ivey Declaration). JSO officers have consistently been present at these events. During this time, no citizen, while in the course of exercising her right to assemble or to engage in speech, has been arrested by JSO officers. *Id.*, n.1. Nor has any citizen been injured by police action. *Id.* Hence, even if Plaintiffs were among those engaged in the 30 plus protests in Jacksonville since May 31, 2020,

they cannot substantiate the "incredible assertion that either" many JSO officers usually unlawfully arrest citizens in retaliation for exercising their rights to free speech and freedom of assembly, and always use excessive force in doing so, or, that the "City ordered or authorized the officers to act in such a manner." *Lyons*, 461 U.S. at 106. *See also Tolbert v. Trammell*, No. 2:13-cv-02108-WMA, 2014 WL 3892115, at *10 (M.D. Ala. Aug, 4, 2014) (plaintiff lacks standing pursuant to *Lyons*); *Bass v. City of Fremont*, No. C12-4943 TEH, 2013 WL 891090, at *8-9 (N.D. Cal. Mar. 8, 2013) (same); *Am. Fed. of Labor-Congress of Indust. Organs. v. City of Miami*, No. 07-22966-CIV-UNGARO, 2008 WL 11333331, at *3 (S.D. Fla. Sept. 9, 2008) (same). *Cf. Church*, 30 F.3d at 1338-39 (where plaintiffs alleged that they continued to be arrested and charged by police, plaintiffs had sufficiently articulated a custom, policy, and practice, to establish standing to seek injunctive relief); *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276, 1290 (S.D. Fla. 2018) (plaintiff can seek injunctive relief where plaintiff "is not challenging a sporadic, random practice of government officers gone rogue, but an established, blanket County policy . . . ."); *Occupy Fresno v. County of Fresno*, 835 F. Supp. 2d 849, 870 (E.D. Cal. 2011) (plaintiffs warranted injunctive relief where evidence indicated ongoing encounters between plaintiffs and police, where arrests were frequently occurring); *Noble v. Tooley*, 125 F. Supp. 2d 481, 484 (M.D. Fla. 2000) (injunctive relief appropriate where plaintiffs presented evidence of defendant's policy to instigate searches in violation of the Fourth Amendment).

Of course, Plaintiffs may still have standing to pursue their damage claims against the individual officers, or standing for their damages claim against the City. However, in terms of their request for injunctive relief, Plaintiffs lack standing. As such, this Court does not have

jurisdiction over Plaintiffs' injunction claims, and should therefore deny their prayer for preliminary relief on the same.[9]

## B. Likelihood of Success on the Merits

Assuming Plaintiffs do have standing for the sake of argument, Plaintiffs are also unable to establish they have a substantial likelihood of success on the merits of their claims. *See Swain*, 958 F.3d at 1088; *Parker*, 275 F.3d at 1034–35; *Church*, 30 F.3d at 1342. Courts have recognized this element as the most important in determining whether to grant a preliminary injunction. *Deutsche Bank Sec., Inc.*, 2019 WL 1077905 at *3. Therefore, this Court should reject Plaintiffs' request for preliminary injunctive relief.

Plaintiffs' Count I alleges a municipal liability claim against JSO for the "practice, custom and/or policy of ordering peacefully assembled protesters to disperse" without legal cause, and the "practice, custom and/or policy of arresting and using excessive force against Plaintiffs and other protesters to silence them" in violation of their rights to free speech and free assembly. Complaint at ¶¶ 79-80. In Count II, Plaintiffs allege a claim of municipal liability against JSO for the "custom and/or policy of arresting and using excessive force against Plaintiffs and other protesters without probable cause . . . ." *Id.* at ¶82. For both counts, Plaintiffs seek declaratory and injunctive relief. *Id.* ¶¶ 78-82.[10] The allegations laid out in

---

[9] In large measure, Plaintiffs' request for injunctive relief is merely a request that JSO officers exercise their arrest powers in accordance with the law. *See* Motion at 3-4. "It is well-established in this circuit that an injunction that a party do nothing more specific than 'obey the law' is impermissible." *Elend*, 471 F.3d at 1209. *See also Marlowe v. Leblanc*, No. 20-30276, 2020 WL 2043425, at *2 (5th Cir. Apr. 27, 2020); *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016); *Daker v. Head*, No. 5:14-cv-138-MTT-CHW, 2019 WL 861406, at *3 (M.D. Ga. Feb. 22, 2019); *Alpert v. Bergmann*, No. 9:04-cv02318EAKMSS, 2005 WL 1667668, at *1 (M.D. Fla. Jul. 8, 2005).

[10] In all of Plaintiffs' other claims against Defendants, they seek damages.

Plaintiffs' Complaint, the arguments presented in their Motion, along with their supporting evidentiary documentation, are insufficient for Plaintiffs to meet their burden of proving they have a substantial likelihood of success on the merits of their municipal liability claims against JSO.[11]

A municipality cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers. *See Monell*, 436 U.S. at 693–95; *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Rather, Plaintiffs must establish that JSO and the City had a policy, custom, or practice that caused Plaintiffs' constitutional harms. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Thus, in order to hold a municipality liable, a plaintiff must allege and prove that her constitutional rights were violated, the municipality had a custom or policy that permitted the violation of those rights, and that the policy or custom actually caused the violation. *See McDowell*, 392 F.3d at 1289 (citing *City of Canton*, 489 U.S. at 388).

---

[11] Plaintiffs' Counts III–X seek damages from the individual defendant officers for violations of Plaintiffs' First and Fourth Amendment rights. Even if Plaintiffs were able to succeed on the merits of these claims, such success should not warrant their ability to obtain preliminary injunctive relief against the City. There is a logical disconnect between contending that because an *individual officer* is likely to be liable in damages to Plaintiffs for a constitutional tort, the *City* should be preliminarily enjoined from certain actions pending litigation in this matter. Moreover, if what Plaintiffs are seeking is the ability to enjoin the individual officers from certain actions, Plaintiffs lack standing to do so. Pursuant to the *Lyons* discussion *supra*, Plaintiffs must plead and prove that they face a real and imminent threat of another unlawful arrest by the specific defendant officer who initially arrested them. *See Lyons* 461 U.S. at 105-06. Without such a showing – which Plaintiffs have not made – they are not able to demonstrate a substantial likelihood of success on the merits for those claims due to their lack of standing to seek such relief. Accordingly, as this Court considers the success on the merits element in the preliminary injunction analysis, it should only consider Counts I, II, and Plaintiffs' final count, in which they seek relief from the City, rather than the counts against the individual officers.

The Supreme Court has further explained that its *Monell* decision is

> a "case about responsibility," and is meant to limit § 1983 liability to acts which the municipality has officially sanctioned or ordered. There are, however, several different ways of establishing municipal liability under § 1983. A municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. And a municipality can be held liable on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.

*Hoefling*, 811 F.3d at 1279 (citations and quotations omitted). Moreover,

> [t]he policy or custom requirement of *Monell* applies to § 1983 claims for declaratory or injunctive relief no less than claims for damages. Because a district court cannot award prospective relief against a municipality unless the requirements of *Monell* are satisfied, plaintiffs must establish that they are likely to satisfy the requirements of *Monell* to obtain a preliminary injunction against a municipality.

*Swain v. Junior*, 958 F.3d at 1091 (citations omitted). *See also Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951 (2018) ("[i]t is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability *at all* unless the harm was caused in the implementation of 'official municipal policy.'") (emphasis added); *Swain v. Junior*, No. 20-11622, 2020 WL 3167628, at *10 (11th Cir. June 15, 2020) ("Municipal liability is thus plainly part of the likelihood-of-success-on-the-merits inquiry at the preliminary-injunction stage . . . ."). Therefore, even if Plaintiffs are able to show that they suffered harm to their First and Fourth Amendment rights, they have not established that the harms they suffered were caused by a municipal policy or custom indifferent to their constitutional rights. In particular, nothing in Plaintiffs' Complaint, supporting materials, or Motion, is sufficient to establish a likelihood of success on the merits of their injunctive relief *Monell* claims against the City.

At the outset, Plaintiffs' Complaint contains little in terms of specific factual allegations regarding any municipal custom, policy, or practice sanctioning JSO's dispersal of otherwise peaceful protestors or arresting such protesters because of their speech. The Complaint is also short on any specific factual allegations regarding a municipal custom, policy, or practice directing that JSO officers arrest and use excessive force against protesters without probable cause. At most, Plaintiffs allege that "Defendant Williams' practice of arresting and utilizing force upon peaceful protesters violates Plaintiffs' First Amendment Rights," and that "[a]s a proximate cause of Defendant Williams' policies, practices, customs, acts and omissions complained of herein . . . Plaintiffs will suffer and will continue to suffer . . . ." Complaint at ¶¶ 73, 75.[12] However, aside from these passing references, Plaintiffs provide no further allegations in their Complaint regarding what the unconstitutional policies were, who effectuated them, or how they came into being.

Nor are Plaintiffs' particular legal counts against Defendants any more specific. At most, in Count I, Plaintiffs allege in a conclusory manner that

> Sheriff Williams' practice, custom and/or policy of ordering peacefully assembled protesters to disperse when those protesters did not present a clear and present danger of imminent violence, harm to public order, and were not blocking traffic violated Plaintiffs' right to assembly protected by the First Amendment of the United States Constitution. [Additionally,] . . . Williams' practice, custom and/or policy of arresting and using excessive force against Plaintiffs and other protesters to silence them deprives Plaintiffs of their rights under the First Amendment[] of the United States Constitution.

*Id.* at ¶¶ 79-80. Similarly, in Count II, Plaintiffs simply allege that "Sheriff Williams' custom and/or policy of arresting and using excessive force against Plaintiffs and other protesters

---

[12] Plaintiffs also allege, without elaboration, that the Officer Defendants, "acted in conformity with the customs, practices, and policies of the Jacksonville Sheriff's Office . . . ." Complaint at ¶¶ 8-11.

without probable cause to believe they committed a crime violates their Fourth Amendment Rights." *Id.* at ¶ 82.[13] Thus, if these claims proceeded to the motion to dismiss stage, a review of Plaintiffs' pleadings would compel a finding that even when construing their Complaint in a light most favorable to their position, Plaintiffs have failed to plausibly allege that JSO had a policy, custom, or practice that was the cause of Plaintiffs' First and Fourth Amendment harms. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (laying out standard to evaluate a motion to dismiss); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (same); *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006) (same); *Hawthorne v. MacAdjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (same). At best, Plaintiffs' allegations regarding municipal policy and customs are conclusory. Allegations asserting "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) *abrogated on other grounds by Mohamad v. Palenstinian Auth.*, 556 U.S. 449 (2012)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (quoting

---

[13] Likewise, in Plaintiffs' last count in their Complaint, they allege that

> Williams, in his official capacity as Sheriff of the City of Jacksonville . . . instituted . . . practices, customs, and policies which directly resulted in the unlawful arrests and use of force against Plaintiffs, which were the moving force causing their injuries . . . . The Sheriff's Office has exhibited a widespread custom, practice, and/or policy of violating these rights as exhibited by the numerous arrests and uses of force carried out during the protests. By encouraging and failing to discipline his officers for these constitutional violations, Defendant Williams has ratified his officers' decisions and reasons for those decisions, thus constituting a practice, custom and/or policy.

Complaint at ¶¶ 120-122. Plaintiffs request damages for this last count. However, and as developed above, even for this count seeking non-equitable relief, Plaintiffs have failed to satisfy the *Monell* policy, custom, or practice requirement.

*Twombly*, 550 U.S. at 557)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Here, Plaintiffs' allegations do not go beyond "threadbare recitals" and thus would not survive a motion to dismiss. If Plaintiffs' municipal liability claims would fail at the motion to dismiss stage of these proceedings, Plaintiffs have not established a likelihood of success on the merits of their claims. Additionally, Plaintiffs' evidentiary filings in support of their Motion, *see* Docs. 11-1 – 11-12, do not advance their claim that that JSO has a policy and custom in place that caused Plaintiffs' purported constitutional harms. Nothing in Plaintiffs' proffered evidence evinces that the events which occurred on May 31, 2020, were the result of a municipal custom, policy, or practice. Moreover, Plaintiffs' Motion lacks any direct discussion regarding the *Monell* requirement of a municipal custom, policy, or practice. At most, Plaintiffs generally reference purported "customs, polices, practices, acts and omissions complained of herein," and develop this charge only so far as to state that JSO has a "practice of ordering lawful and peaceful protesters to disperse," and a "practice of indiscriminately arresting protesters." Motion at 3, 19, 24. While Plaintiffs' Complaint and Motion are replete with allegations of wrongdoing by the individual officers, Plaintiffs advance no evidence or argument that the alleged constitutional harms they suffered were caused by JSO's customs and polices.

Plaintiffs' analysis for why they can establish a likelihood of success on the merits also misses the mark. Plaintiffs focus their discussion entirely on the substantive requirements for establishing free speech, free assembly, and unlawful arrest violations. However, nowhere in their argument is any explanation of how Plaintiffs suffered a constitutional injury that was *caused* by a municipal policy and custom, assuming any of them suffered a constitutional injury at all. The majority of the cases upon which Plaintiffs rely do not address questions of municipal

16

liability but address facial and as-applied challenges to statutes and convictions rendered under them, or address questions of individual liability and qualified immunity for state actors. *See generally* Motion. *See also e.g.*, *Cox v. La.*, 379 U.S. 536 (1965) (direct challenge to conviction under statute allegedly infringing on free assembly and free speech rights); *Edwards v. S.C.*, 372 U.S. 229 (1963) (direct challenge to conviction under breach of peace statute); *Andrews v. Scott*, No. 17-14377, 729 Fed. Appx. 804 (11th Cir. 2018) (addressing qualified immunity claims raised by defendants); *Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010) (addressing qualified immunity claims raised by individual officers); *U.S. v. Frandsen*, 212 F.3d 1231 (11th Cir. 2000) (direct challenge to conviction under statute regarding protesting without a permit). Therefore, regardless of whether Plaintiffs can show that their First and Fourth Amendment rights were violated – a necessary element in a *Monell* action – they have not established the equally vital element that their harm was the result of a municipal custom or policy. *McDowell*, 392 F.3d at 1289.

Finally, the City's evidentiary submissions in opposition to Plaintiffs' Motion undermine any argument that Plaintiffs' constitutional harms were caused by a municipal policy or custom. As detailed by Undersheriff Ivey, in no manner does JSO have a custom, policy or practice of sanctioning false arrests, excessive force, or arrests in violations of a citizen's First Amendment rights. *See* Ivey Declaration at ¶ 4. To the contrary, JSO has a well-developed internal review system to hold officers responsible when their actions fall short of the law and JSO policies. *Id.* at ¶¶ 6-7. Finally, as noted by Undersheriff Ivey, ten days after the May 31, 2020 protests, Sheriff Williams and members of his senior leadership team joined Jacksonville Mayor, Lenny Curry, and Leonard Fournette of the Jacksonville Jaguars, in an important demonstration of unity at City Hall. *Id.* at n.1. In view of this expression and demonstrated commitment by the

Sheriff to the community, Plaintiffs are hard-pressed to advance their argument that there exists a municipal policy through JSO of silencing protesters through arrests because of the content of their speech.

In conclusion, Plaintiffs are unable to show success on the merits of their relevant claims. As such, their request for preliminary injunctive relief is inappropriate and should be rejected by this Court.

### C. Irreparable Injury

Plaintiffs also are unable to show the irreparable injury necessary to obtain a preliminary injunction. Of course, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). However, in cases like the one currently before this Court,

> the Supreme Court has recognized that the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury *which is both great and immediate.* More generally, whenever a court is asked to exercise its equitable powers to oversee state law enforcement authorities, it must be especially mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.

*Campbell v. City of Oakland*, No. C 11-5498 RS, 2011 WL 5576921, at *4 (N.D. Cal. Nov. 16, 2011) (emphasis in original) (citing *Lyons*, 461 U.S. at 112). Hence, even in the context of allegations regarding the First Amendment, a "plaintiff must show that this irreparable injury is likely to recur," in order to obtain a preliminary injunction. *Cuviello v. City of Stockton*, No. CIV. S-07-1625 LKK/KJM, 2008 WL 4283260, at *6 (E.D. Cal. Sept. 16, 2008). "Evidence of past incidents alone is not enough, unless plaintiffs show that those incidents were part of a policy or on-going pattern that continues to threaten their rights." *Id. See also Bethel v. City of*

*Mobile, Ala.*, No. 10-009-CG-N, 2010 WL 457488, at *2 (S.D. Ala. Feb. 8, 2010) (preliminary injunction inappropriate where plaintiff was unable to show irreparable injury in terms of ongoing violations of First Amendment rights). In concert with the foregoing discussion regarding Plaintiffs' failure to present a successful municipal liability claim, Plaintiffs are also unable to show that for the purposes of a preliminary injunction, they have satisfied the irreparable injury requirement.

## V. Conclusion

This Court should deny Plaintiffs' request for preliminary injunctive relief. First, the Court does not have jurisdiction to grant Plaintiffs' request, as Plaintiffs lack standing for Counts I and II. Second, Plaintiffs have not established a substantial likelihood of success on the merits for their municipal liability claims. Plaintiffs have presented nothing to support an argument that their purported constitutional injuries were caused by a municipal policy or custom. Finally, Plaintiffs have not demonstrated that they will suffer irreparable harm absent the Court granting preliminary relief.

Accordingly, the Court should deny the Plaintiffs' Motion.

Respectfully submitted,

**OFFICE OF GENERAL COUNSEL**
**CITY OF JACKSONVILLE**

*/s/ Stephen J. Powell*
*/s/ Mary Margaret Giannini*
**SEAN B. GRANAT, ESQ.**
Deputy General Counsel
Florida Bar No.: 0138411
Email: sgranat@coj.net; DorothyO@coj.net

**STEPHEN J. POWELL, ESQ.**
Chief, Tort & Employment Litigation
Florida Bar No.: 305881
Email: spowell@coj.net; pcipolla@coj.net

**MARY MARGARET GIANNINI, ESQ.**
Assistant General Counsel
Florida Bar No.: 1005572
Email: MGiannini@coj.net; ASeegobin@coj.net

City Hall
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 255-5100; (904) 255-5120 (fax)

**ATTORNEYS FOR DEFENDANT
SHERIFF MIKE WILLIAMS/CITY
OF JACKSONVILLE**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 6, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

*/s/ Stephen J. Powell*
**STEPHEN J. POWELL, ESQ.**