UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DELAINE SMITH;
BRIAUNA BOSWORTH;
SHARRONA BRIGHTMAN, and
ELIZABETH MULRONEY,

        CASE NO.: 3:20-cv-0629-BJD-JRK

    Plaintiffs,

v.

SHERIFF MIKE WILLIAMS,
in his official capacity as Sheriff of the
City of Jacksonville, Florida,
J.W. WING, individually;
F. CANNADAY, individually,
D.D. STUHR, individually;
C.S. JOHN, individually.

        **DISPOSITIVE MOTION**

    **Defendants.**
_____/

**DEFENDANTS WING, CANNADAY, STUHR
AND JOHN'S MOTION TO DISMISS COMPLAINT
WITH PREJUDICE WITH MEMORANDUM OF LAW**

    COMES NOW, the Defendants Wing, Cannaday, Stuhr and John ("Officers"), by and through the undersigned attorney, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and hereby move to dismiss all claims against them in the Plaintiff's Complaint (Doc. 1), with prejudice, for failure to state a claim upon which relief can be granted. In support therefor, the Officers state:

**Factual Basis**

    According to the Complaint,[1] on "May 31, 2020, protesters congregated peacefully outside the Duval County courthouse to protest police brutality against black people in the wake

---

[1] The Officers dispute the facts as alleged in the Complaint but understand that for the purposes of ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. Pro., the District Court must accept the complaint's allegations

of George Floyd's killing." Doc 1, ¶ 15. Near the start of the protest an unidentified JSO officer made an announcement that any breach of peace or disorderly conduct would cause the police to take "appropriate action" and if anyone present had any questions, they should speak with an on-scene police supervisor. *Id*., ¶ 16. The Complaint states that at some point later in the day, "JSO made an announcement to 'disperse the area'" to protesters who were at the scene. *Id*., ¶ 18.

According to the Complaint, at that time Plaintiff Smith approached an unidentified JSO officer "to assist them in ensuring the protesters disbursed peacefully," and asked if "protesters could continue to protest in small groups." *Id*. After confirming that the police wanted those present to leave the area, "protesters began to walk away." Id., ¶ 19. However, Smith asserts that she was arrested by Defendant Wing for unlawful assembly at some point thereafter, while "assisting the officers by asking protesters to leave the area." Id., ¶ 20.

The Complaint then describes how Plaintiff Mulroney, who presumably was at the courthouse protest with Smith, was arrested by Defendant John while walking near the intersection of Broad and West Duval Streets, "away from the courthouse," after the dispersal order was given. Id., ¶ 21.

Regarding Bosworth and Brightman, the Complaint states that after attending the protest at the Main St. Bridge, where a dispersal order was given, Bosworth and Brightman walked to the courthouse, but were told to leave the area as well. Id., ¶¶ 34, 37, 38. They then walked towards the Police Memorial Building where they were intercepted by Cannaday and Stuhr for unlawful assembly. Id., ¶¶ 40, 41.

---

as true and construe them in the light most favorable to the plaintiff. *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012).

**Argument**

Each individual plaintiff has filed federal claims under 42 U.S.C. § 1983, for First Amendment Retaliation and False Arrest against the individual officer defendant who arrested her. Smith has sued Wing, Mulroney has sued John, Bosworth has sued Cannaday and Brightman has sued Stuhr. Each of these claims are due to be dismissed because the Officers violated no clearly established law under the United States Constitution.

There is no dispute that the Plaintiffs enjoyed rights under the First Amendment to peacefully attend a protest rally, speak in opposition to police practices and publicly speak disparagingly about police officers, as long as their words did not incite violence. However, even construing the facts as alleged by the Plaintiffs in the light most favorable to them, arresting a person who is still present in the area after an assembly has been declared unlawful does not violate a clearly existing right. Without establishing a such a violation, the Officers are protected by qualified immunity from claims brought against them individually, as they acted within the scope of their discretionary authority and violated no clearly established law.

I.      **Motion to Dismiss Standard**

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim" that will "give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Rule 8(a)(2), Fed. R. Civ. P.). To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pursuant to the traditional view, the District Court may only grant a Rule 12(b)(6) motion to dismiss where it has been demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim to relief. *Conley*, 355 U.S. at 45-46. However, the

Supreme Court has since fine-tuned the standard to reflect that the dismissal standard was one of plausibility under which a complaint must contain enough facts to state a claim that raises the "right to relief above the speculative level," or it will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

> In *Iqbal*, the Court further elaborated on its opinion in *Twombly*, succinctly stating:
>
> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. * * * Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678 (internal citations omitted). The Court explained that the plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the factual basis for a complaint is "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." *Id*. Accordingly, "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim, should be rejected as "conclusory and [are] not entitled to be assumed true." *Id.* at 679 (internal citations and quotations omitted); *see also, S.D. v. St. Johns County School Dist.*, 22 Fla. L.Weekly Fed. D7, 2009 WL 2381287 *1-2 (M.D.Fla.).

Although the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim, a court may nonetheless dismiss a complaint on a dispositive issue of law. *Day v. Taylor*, 400 F. 3d 1272, 1275 (11th Cir. 2005). Additionally, where the facts alleged are conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts, the complaint may be subject to dismissal. *Davila v. Delta Airlines, Inc.*, 326 F. 3d 1183 (11th Cir. 2003). Dismissal is warranted if, assuming the truth of the factual allegations of the Plaintiffs' Complaint, there is a dispositive legal issue that precludes relief. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## II.     Qualified Immunity Generally

Although the Officers do not concede the allegations in the Complaint to be the actual facts, when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Id.* at 323. However, a complaint may "be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages provided his or her conduct does not violate clearly established federal or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit, rather than a mere defense to

liability" and it is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). The Supreme Court of the United States has rejected the argument that qualified immunity cannot be granted before discovery and stated that "qualified immunity questions should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635 (1987). The driving force behind the creation of the qualified immunity doctrine was a desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 640, n. 2.

When a trial court must determine whether a defendant may benefit from qualified immunity, the Supreme Court has in the past mandated that the trial court must first determine whether the defendant's conduct violated a Constitutional right. *Saucier v. Katz*, 533 U.S. 194 (2001). Once that has been determined, only then does the analysis take the next step to determine whether the defendant violated clearly established law at the time of the alleged misconduct. *Id.* The Supreme Court, however, reconsidered this rigid approach and concluded that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223 (2009). Lower courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand. *Id*.

III. **The First Amendment Retaliation and False Arrest Claims**

    a. **First Amendment Retaliation**

To state a First Amendment Retaliation claim in the Eleventh Circuit, a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*,

423 F. 3d 1247, 1250 (11th Cir. 2005).  In regard to the second element, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights.  *Id*. at 1254.  In order to establish the third element, the causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech.  *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011).  However, the plaintiff must show that the defendant had "actual knowledge of the plaintiffs' protected speech, which can be established by circumstantial evidence."  *Wall-DeSousa v. Fla. Dep't of Highway Safety & Motor Vehicles*, 691 F. App'x 584, 591 (11th Cir. 2017).

Each of the plaintiffs' claims for First Amendment Retaliation are based on the fact that they were arrested.  Doc. 1, ¶¶ 85, 94, 103, 112.  For such a retaliation claim to stand, the retaliatory arrest must have been made without actual probable cause, or even arguable probable cause.  In the Eleventh Circuit, arguable probable cause to arrest defeats not only Fourth Amendment claims for false arrest, but also First Amendment claims stemming from the arrest.  *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018).

  b.  **False Arrest**

In the Eleventh Circuit, a false arrest is defined as "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty."  *Bartley v. Kim's Enter. of Orlando*, 568 Fed.Appx. 827, 834 (11th Cir. 2014) (internal quotations and citations omitted).  Under Federal law, an arrest is unlawful when it occurs "without a warrant and without probable cause."  *Jones v. Brown*, 649 Fed.Appx. 889, 890 (11th Cir. 2016).  To prevail on a false arrest claim under Section 1983 a plaintiff bears the burden of proving a lack of probable cause.  *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir.

1998). The existence of probable cause at the time of an arrest is an "absolute bar to a Section 1983 action for false arrest." *Marx v. Gumbinner*, 905 F.2d 1503, 1505-6 (11th Cir. 1990). In fact, in qualified immunity cases, an officer need not possess actual probable cause, but only "arguable probable cause," i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed. *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

In the Eleventh Circuit, "the standard for determining the existence of probable cause is the same under both Florida and federal law – whether 'a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer.'" Rankin, 133 F.3d at 1433. (citations omitted). Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).[2]

The criminal offense of Unlawful Assembly has been part of the statutory regime in Florida since 1892, yet there is but a single relevant case construing the statute. In 1977, the

---

[2] At this point it bears mentioning that the Plaintiffs have incorporated paragraphs 1 – 77, the factual allegations, into each of the claims against the Officers. However, notwithstanding this incorporation, most – if not all – of the facts do not apply to all of the Plaintiffs, and in fact, certain facts do not apply to any of the Plaintiffs. None of the Plaintiffs are alleged to have knowledge of the language contained in the arrest reports, nor having taken part in the activities at the Main Street Bridge, nor having seen the use of force incidents captured in the videos or, regarding Plaintiffs Bosworth and Brightman at least, having seen the events at the courthouse. Many of the allegations in paragraphs 1 – 77 may or may not apply to the claims against Sheriff Williams, but many certainly do not apply to claims against the Officers and are thus not relevant in the qualified immunity analysis.

Florida Supreme Court held that to prove a violation of Section 870.02, Unlawful Assembly, the state must prove three elements: (1) an assembly of three or more persons who, (2) having a common unlawful purpose, (3) assemble in such a manner as to give rational, firm, and courageous persons in the neighborhood of the assembly a well-grounded fear of a breach of the peace. *State v. Simpson*, 347 So. 2d 414, 415 (Fla. 1977).

The events described in the Complaint span a series of downtown city blocks, where at least two orders to disperse were given. There is no question that the JSO made an announcement to disperse to the protesters at the courthouse and at the Main Street Bridge. Doc. 1, ¶¶ 18, 34. There is no allegation that the individual Officers gave the dispersal order; it came from the police command structure after it determined that the protests had evolved into an unlawful assembly. The question thus becomes whether the Officers violated clearly established law in arresting the Plaintiffs who were still in the area after their chain of command determined that the protests had evolved into an unlawful assembly.[3]

The question that necessarily follows is whether the officers were "just following orders?" The Eleventh Circuit has been clear that, "since World War II, the 'just following orders' defense has not occupied a respected position in [Eleventh Circuit] jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them

---

[3] The undersigned has not been able to locate a single case in the Eleventh Circuit construing Sec. 870.02, Fla. Stat. In *Daniel v. City of Tampa, FL*, No. 93-186-CIV-T-17C, 1995 WL 17064337, at *1 (M.D. Fla. Feb. 24, 1995), *aff'd sub nom. Daniel v. City of Tampa*, No. 95-2384, 1995 WL 17064338 (11th Cir. Oct. 12, 1995), the District Court Magistrate held a bench trial on a Sec. 1981 claim, where the plaintiffs were arrested for 870.01(2), Inciting a Riot, and 870.02, Unlawful Assembly, under circumstances similar to those herein. The court found probable cause for the arrests under 870.01(2), thus it never reached an analysis of the claims for false arrest under the unlawful assembly statute.

should question the validity of that order." *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 (11th Cir. 2004) (internal quotations omitted). However, if the record does not indicate that an officer acts unreasonably in following a supervisor's or another officer's lead, or that the officer knew or should have known that their conduct might result in a violation of the [plaintiff's] rights, the officer will be protected by qualified immunity. *Brent v. Ashley*, 247 F.3d 1294, 1306 (11th Cir. 2001); *Hartsfield v. Lemacks*, 50 F. 3d 950 (11th Cir. 1995).

  c. **Plaintiff Smith v. Defendant Wing – Counts III and IV**

Smith was present at the courthouse when JSO command personnel gave a general announcement to the assembled crowd to disperse from the area. Instead of leaving the area, Smith approached an officer and asked to stay and continue protesting. After confirming the order to leave along with the assembled group, Smith stayed anyway, ostensibly "asking the protesters to leave the area." Smith may have intended to help law enforcement, but evidently the police did not need Smith's help in asking protesters to disperse, they were announcing it themselves.

The Complaint provides no information regarding where Wing was located when the dispersal order was given and doesn't provide any information regarding whether Wing had any knowledge as to whether the dispersal order was illegal. The Complaint simply provides a description of what was shown in news video accounts, which does not meet the standards to overcome Wing's assertion of qualified immunity.

As the Eleventh Circuit has explained:

> Once it has been determined that an official was acting with the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate. First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected right. Second, the plaintiff must demonstrate that the right was clearly established at the time of the misconduct.

> A plaintiff must satisfy both prongs of the analysis to overcome a defense of qualified immunity. The determination of these elements may be conducted in any order.

*Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016) (citations omitted). Here there shouldn't be any dispute that Wing was acting within his discretionary authority; thus, the burden shifts to Smith to show that qualified immunity is not appropriate under these circumstances. Smith has not shown where Wing knew that arresting Smith after a dispersal order had been given and she was still in the area, violates clearly established law. Furthermore, since it was not unreasonable for Wing to assume that his chain of command was giving a lawful order of dispersal, Wing had arguable probable cause to arrest Smith and thus the First Amendment Retaliation claim fails as well. Wing should be granted qualified immunity on both the False Arrest and Retaliation claims.

### d.  Bosworth v. Cannaday – Counts V and VI

Bosworth was in the area of the Main Street Bridge when protesters marched in the roadway on the bridge, ostensibly blocking access. See Doc. 1, ¶¶ 28 – 30. During the affray that followed, JSO gave an order to disperse, however Bosworth didn't walk away from downtown, she marched west towards the courthouse, where she was again told to leave the area. Instead of vacating the downtown area, as one would reasonably conclude after the police were ordering protesters to disperse from the area, Bosworth marched east towards the police station. Bosworth's route brought her within two blocks of the Main Street Bridge area, which was the location of the earlier dispersal order.

As explained above, Bosworth's burden is to prove that Cannaday violated a clearly established law. In other words, Bosworth must allege facts that prove Cannaday knew that it was a violation of the law to arrest Bosworth after she returned to an area where a dispersal order

was given. No such facts are alleged in the Complaint. Cannaday had no reason to believe that the dispersal order was unreasonable, thus he had arguable probable cause to arrest Bosworth and Cannaday should be granted qualified immunity on both claims against him.

  **e.**  **Brightman v. Stuhr – Counts VII and VIII**

The allegations in the Complaint regarding Brightman are identical to those involving Bosworth, thus Stuhr incorporates herein, the arguments made on behalf of Cannaday above.

  **f.**  **Mulroney v. John – Counts IX and X**

Mulroney was also present at the courthouse when JSO command personnel gave a general announcement to the assembled crowd to disperse from the area. The only information given in the Complaint is that Mulroney was arrested on the opposite side of the courthouse. The factual allegations of the Complaint do not describe who ordered Mulroney arrested and don't even assert that John was the officer who actually took her into custody. John is merely identified in the claims for relief in Counts IX and X.

Again, Mulroney has the burden of proving that John knew that arresting Mulroney after a dispersal order has been given and she is still in the area, violates clearly established law. John had no reason to believe that the dispersal order was unreasonable, thus she had arguable probable cause to arrest Mulroney and John should be granted qualified immunity on both claims against her.

## Conclusion

WHEREFORE, the Officers respectfully move this Honorable Court to dismiss all claims against them individually.

Respectfully submitted,

**PAUL DARAGJATI PLC**

  /s/   Paul A. Daragjati
**PAUL A. DARAGJATI, ESQ.**
Florida Bar No. 713813
Georgia Bar No. 491830
paul@daragjatilaw.com
5530 Beach Blvd.
Jacksonville, FL 32207
Telephone:	(904) 398-7010 (office)
		(904) 398-7074 (direct)
Fax:		(904) 398-7192
*Counsel for Individual Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will provide an electronic copy to all attorneys of record.

*/s/ Paul A. Daragjati*
*Counsel for Defendants*