UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DELAINE SMITH, BRIAUNA BOSWORTH,
SHARRONA BRIGHTMAN,
and ELIZABETH MULRONEY,

      Plaintiffs,

v.                                       Case No. 3:20-cv-629-J-39JRK

MIKE WILLIAMS, in his official
capacity as Sheriff of the
Consolidated City of Jacksonville, Florida,
J. H. WING, F. CANNADAY,
D. D. STUHR, and C. S. JOHN,

      Defendants.

_____/

## DEFENDANT SHERIFF WILLIAMS'S MOTION TO DISMISS

Defendant, SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the

Consolidated City of Jacksonville ("City"),[1] hereby moves to dismiss Counts I, II, and IV (sic) of

Plaintiffs' Complaint and Demand for Jury Trial.[2] Doc. 1 ("Complaint"). These counts purport

to assert a claim against the City under 42 U.S.C. § 1983 for the Jacksonville Sheriff's Office's

("JSO") alleged custom, policy or practice of unlawfully arresting and using excessive force

_____

[1] The law treats a claim against the Sheriff in his official capacity as a claim against the governmental entity he represents, here the City of Jacksonville. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020) (citing *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 690 n.55 (1978)).

[2] Plaintiffs' Complaint contains a total of 11 counts. Counts I and II seek injunctive relief against the City for JSO's alleged custom and policies of violating citizen's rights to peacefully assemble, as well as a custom and policy of arresting and using excessive force against citizens without probable cause and with the intent to infringe on their rights to free speech. Counts III – X are claims for damages by Plaintiffs who assert federal claims for constitutional violations against the individual officer defendants who arrested them. *Id.* at ¶¶ 83-114. Plaintiffs' final count, which is incorrectly numbered as IV and should have been numbered as "XI", is a municipal liability (*Monell*) claim against the City for damages.

against citizens in violation of the First and Fourth Amendments.  *Id.* at ¶¶ 119-117(sic).  These counts are due to be dismissed for the reasons set forth in the following Memorandum of Law.

## I.      Standard of Review

In order to state a claim, FED. R. CIV. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  To satisfy this standard, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Only a complaint that states a plausible claim for relief survives a motion to dismiss*." Id.* at 679.  "[B]are assertions" which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, should therefore be rejected as "conclusory and not entitled to be assumed true." *Id.* at 681.  *See also S.D. v. St. Johns County School Dist.*, 2009 WL 2381287, at *1-2 (M.D. Fla. July 29, 2009).

"To survive a motion to dismiss, a complaint must plead enough factual matter that, if taken as true, suggests that the elements of the cause of action will be met." *Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1296 (11th Cir. 2007).  Thus, the well-pleaded factual allegations must be taken as true, *and the alleged facts must suggest the required elements of the causes of action on which Plaintiff can recover*."  *Jones v. Jenne*, No. 07-60839-CIV, 2008 WL 2323890 *1 (S.D. Fla., June 2, 2008) (emphasis added).  Nonetheless, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write if for [him]."  *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1260 (11th Cir. 2009). Although a court must accept well-pled facts as true, it is not required to accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Nor is a court is "required to draw plaintiff's inference." *Sinaltrainal*, 578 F.3d at 1260 (internal citation and quotations omitted). Further, "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." *Sinaltrainal*, 578 F.3d at 1261; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (*quoting Twombly*, 550 U.S. at 557)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555.

## II.     Summary of Material Facts for Counts I, II, and XI

Plaintiffs' factual allegations for Count I and II seeking declaratory and injunctive relief are contained paragraphs 1 through 77 of the Complaint. Plaintiffs' factual allegations for Count [XI] seeking damages are contained in paragraphs 1 through 52 of the Complaint. In general, the allegations summarize a day-long protest that occurred on Sunday, May 31, 2020, in downtown Jacksonville, Florida, where the protestors sought to address concerns regarding police treatment of African-Americans. Complaint at ¶¶ 14-52. The May 31, 2020 protest

began peacefully with a crowd that was not uncontrollably large, and at a time when traffic was light in downtown Jacksonville. *Id.* at ¶17.

Later in the day, JSO gave an order to protestors to "disperse the area" at the Duval County Courthouse because of "concerns of public safety." *Id.* at ¶¶ 18-19. Following JSO's dispersal order, Plaintiffs were subsequently arrested for unlawful assembly. *Id.* at ¶¶ 20, 21 and 41. However, as detailed in their Complaint, the sequence of events leading up to each Plaintiff's arrest, the geographical location where each Plaintiff learned of the dispersal order, and where each Plaintiff was arrested is somewhat muddled.

Plaintiff Smith alleges she was *assisting* police in trying to get protestors to disperse when she was arrested at the courthouse. *Id.* at ¶ 20. Plaintiff Mulroney alleges she was arrested after JSO issued the order to disperse. *Id.* at ¶ 21. She alleges her arrest occurred as she was trying to disperse, but as she became lost trying to find her vehicle. *Id.* She further alleges shoulder pain as a result of the force used in her arrest. *Id.* at ¶ 22.

Plaintiffs Bosworth and Brightman allege they were marching toward Main Street bridge. *Id.* at ¶ 28. When protestors began to block the bridge, and impeding JSO vehicles from travelling on the ramp, *id.* at ¶¶ 29-30, JSO ordered the protestors on the bridge and in the immediate area to disperse. *Id.* at ¶ 34. Plaintiffs Bosworth and Brightman headed from the Main Street bridge back to the courthouse where they allege JSO told them they could not be there. *Id.* at ¶¶ 37-38. Plaintiffs then began to walk back east through downtown towards the Police Memorial Building. *Id.* at ¶40. They were subsequently arrested at the corner of Bay Street and Market Street. *Id.* at ¶41.

Stemming from these allegations, Plaintiffs assert in Count XI that JSO "exhibited [a] widespread custom, practice, and/or policy of violating [the] rights as exhibited by the numerous

4

arrests and use uses of force carried out during the protests." *Id.* at ¶ 121. Likewise, Plaintiffs assert in Counts I and II, that JSO's "practice of arresting and utilizing force upon peaceful protestors violates" the Plaintiffs First and Fourth Amendment rights. *Id.* at ¶¶ 73, 80, and 82.

However, other than the allegations laid out above, Counts I, II, and XI are devoid of any factual allegations to support Plaintiffs' claim that JSO has a practice, custom and/or policy that resulted in unlawful arrests and use of excessive force against the Plaintiffs. The Court, therefore should dismiss Plaintiffs' Counts I, II, and XI.

### III. Counts I, II and XI Fail to State a Claim for Relief Against the City under Section 1983

In order to advance their claims against the City, Plaintiffs must allege that the City had a policy, practice, and/or custom of arresting protestors in violation of their First Amendment rights, as well as a policy, practice and/or custom of using excessive force in unlawful arrests. Plaintiffs' Complaint fails to plausibly allege any such policy, practice and/or custom. Accordingly, Plaintiff's claims should be dismissed.

Plaintiffs have not sufficiently alleged that they each suffered harm to their First and Fourth Amendment rights as the result of a municipal policy or custom indifferent to their constitutional rights. A municipality cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers. *See Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 693–95 (1978); *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Rather, Plaintiffs must establish that JSO and the City had a policy, custom, or practice that caused Plaintiffs' constitutional harms. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Thus, in order to hold a municipality liable, a plaintiff must allege and prove that her constitutional rights were violated,

the municipality had a custom or policy that permitted the violation of those rights, and that the policy or custom actually caused the violation. *See McDowell*, 392 F.3d at 1289 (citing *City of Canton*, 489 U.S. at 388).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (*en banc*) (quotation omitted). Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton*, 489 U.S. at 389 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986)).

A plaintiff has two methods to establish a municipal policy: (1) an official promulgated policy, or (2) "an unofficial custom or practice . . . shown through the repeated acts of a final policymaker for the [municipality]." *Grech*, 335 F.3d at 1329. A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation; therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. *See Grech*, 335 F.3d at 1330; *McDowell*, 392 F.3d at 1289. The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell*, 117 F.3d at 489. As such, liability may be established "by acquiescence in a

longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

In addition, a municipality may be liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling*, 811 F.3d at 1279 (citing *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002)). In this context, the "final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." *Matthews,* 294 F.3d at 1297-98 (internal quotations and citations omitted). The Eleventh Circuit has also suggested that a City's "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality ratified conduct, thereby establishing a 'custom' within the meaning of *Monell*." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985). In addition, failing to discipline an officer for a single incident is not an official policy, custom, or practice. As the Eleventh Circuit has explained,

> [a] single incident would not be so pervasive as to be a custom, because a custom must be such a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it. This requirement of proof prevents the imposition of liability based upon an isolated incident, and ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.

*Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal citations and quotations omitted). Finally, the Supreme Court has ruled that,

> [p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it *was caused by an existing*, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, its origin, must be separately proved. But

> where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every cast to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (emphasis added).

Counts I, II and XI fail to identify with any specificity any municipal, policy, custom or practice which existed and caused the alleged violations of Plaintiffs' constitutional rights. *See Grech*, 335 F.3d at 1329. Further, Plaintiffs fail to allege specific incidents that rise to the level of a persistent failure to take disciplinary action by JSO to establish a custom of tolerating First and Fourth Amendment violations in arrests of protestors. *Fundiller*, 777 F.2d at 1443. At most, Plaintiffs allege conclusory statements to attempt to state a § 1983 claim against the City.

It is well-settled that more than conclusory and vague allegations are required to state a cause of action under § 1983. *See L.S.T., Inc., v. Crow*, 49 F.3d 679, 684 (11th Cir. 1995) (*per curiam*); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Plaintiffs' broadly allege that JSO has a "practice of arresting and utilizing force upon peaceful protestors" exercising their First Amendment rights. (Complaint at ¶ 73). Plaintiffs make the same conclusory allegation in Count I by claiming that JSO has a "practice, custom and/or policy of arresting and using excessive force against Plaintiffs and protestors to silence them" depriving them of their First Amendment rights. *Id.* at ¶ 80. In Count II, Plaintiffs again allege that JSO has a "custom and/or policy of arresting and using excessive force against Plaintiffs and other protestors without probable cause violating their Fourth Amendment rights. *Id.* at ¶ 82. Finally, in Count XI, the Plaintiffs allege a combination of the allegations made in Counts I and II, and add that the numerous arrests that occurred on May 31, 2020, and the alleged excessive force that officers used in effecting some of those arrests, evidence the City's widespread custom, practice and/or

policy of unlawful arrest practices. *Id.* at ¶ 121. Plaintiffs' bare assertions regarding the unspecified practices and customs of the City, however, are insufficient to state a claim for municipal liability.

Moreover, Plaintiffs' general references that "numerous arrests and uses of force were carried out during the protests" and that these arrests were ratified by the Sheriff or that the officers' decisions on that day were elevated to the status of a final policymaker (*see* Complaint at ¶¶ 121, 122, 123) are conclusory and insufficient to plausibly allege a custom, practice or policy for *Monell* purposes. The Plaintiffs must allege that at the time of their arrests, the City already had an existing, unconstitutional municipal policy, which caused them injury. The Plaintiffs have failed to allege specific facts that separately prove the origin and existence of a municipal policy in each claim against the City as required by the Supreme Court in *Tuttle.* Accordingly, the Plaintiffs' conclusory references of other unlawful arrests and uses of force that allegedly occurred on May 31, 2020, are insufficient to establish a municipal policy, practice and custom for liability under *Monell.* Therefore, the Court should dismiss the Complaint against the City for failure to state a claim for relief.

## IV.    Conclusion

For reasons stated, Counts I, II and XI of the Plaintiffs' Complaint are due to be dismissed.

Respectfully submitted,

**OFFICE OF GENERAL COUNSEL**
**CITY OF JACKSONVILLE**

*/s/ Gabriella Young*
**SEAN B. GRANAT, ESQ.**
Deputy General Counsel
Florida Bar No.: 0138411
Email: sgranat@coj.net; DorothyO@coj.net

9

**STEPHEN J. POWELL, ESQ.**
Chief, Tort & Employment Litigation
Florida Bar No.: 305881
Email: spowell@coj.net; pcipolla@coj.net

**MARY MARGARET GIANNINI, ESQ.**
Assistant General Counsel
Florida Bar No.: 1005572
Email: MGiannini@coj.net; ASeegobin@coj.net

**GABRIELLA YOUNG**
Assistant General Counsel
Florida Bar No.: 183709
Email: gcyoung@coj.net; HDugan@coj.net

City Hall
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 255-5100; (904) 255-5120 (fax)

**ATTORNEYS FOR DEFENDANT
SHERIFF MIKE WILLIAMS/CITY
OF JACKSONVILLE**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 13, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

*/s/ Gabriella Young*
**GABRIELLA YOUNG, ESQ.**